IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



FILED
APR - 2 2021
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**LARRY KENNETH SPEED**

    Petitioner,

v.                                                         Criminal No. 2:00-cr-92

**UNITED STATES OF AMERICA,**

    Respondent.

*MEMORANDUM OPINION & ORDER*

Before the Court is Larry Kenneth Speed's ("Petitioner") motion requesting compassionate release pursuant to 18 U.S.C. § 3582(c). ECF No. 212. The Government opposed the motion and Petitioner replied. ECF Nos. 221, 222. This matter is now ripe for judicial determination. For the reasons below, the Petitioner's motion is **DENIED**.

### I. FACTUAL AND PROCEDURAL HISTORY

On July 21, 2000, Petitioner were named in a Nineteen-Count Superseding Indictment related to possession and distribution of drugs. ECF No. 29. On December 22, 2000, Petitioner plead guilty to Conspiracy to Distribute and Possess with Intent to Distribute 50 Grams or More of Cocaine Base, 5 Kilograms or More of Cocaine, and 1 Kilogram or More of Heroin, in violation of 21 U.S.C. 846 (Count One) and Murder While Engaged in a Drug Offense, in violation of 21 U.S.C. 848 (e) (1) (A) (Count Four). ECF No. 124. According to his Presentencing Report ("PSR"), and the Statement of Facts, from Fall 1987 and continuously thereafter up to January 1999, Petitioner intentionally conspired with his co-conspirators to distribute and possess with the intent to distribute fifty (50) grams or more of cocaine base, five (5) kilograms or more of cocaine, and one (1) kilogram or more of heroin. ECF No. 209 at ¶ 5. During the conspiracy, Petitioner assumed various leadership roles including organizer, manager, supervisor, supplier, distributor,

1

enforcer, and robber. *Id.* at ¶ 6. As part of the conspiracy, Petitioner and his co-conspirators used various methods to conceal the conspiracy and their unlawful drug activities which included murders, robberies, home invasion robberies, shootings, assaults, and other acts of intimidation and possessing and using weapons. *Id.* at ¶¶ 11-92. In all, Petitioner was attributed with multiple acts of violence, including a murder, robberies, serious bodily injuries, and with 9,570.875 grams of cocaine, 10,240.895 grams of "crack" cocaine, and 1,250.38 grams of heroin, which converts to 207,982.45 kilograms of marijuana. *Id.* at ¶¶ 93, 96. In his PSR, Petitioner reported his overall health as good and noted no history of any serious or chronic medical conditions. *Id.* at ¶ 145. Petitioner was assessed a total offense level of 49, a criminal history category III, and a recommended guideline provision of Life imprisonment *Id.* at ¶¶ 170-172. On March 27, 2001, the Court imposed a sentence of Life imprisonment on Counts One and Four followed by five years of supervised release. ECF No. 131. Petitioner is currently incarcerated at FCI Petersburg Medium, in Virginia.

On December 17, 2020, Petitioner filed his *pro se* motion for compassionate release. ECF No. 207. On February 10, 2021, Petitioner filed the motion through counsel. ECF No. 212. The Government opposed the motion and Petitioner replied. ECF Nos. 221, 222.

Petitioner requests compassionate release because of the ongoing COVID-19 pandemic. ECF Nos. 207, 212. At age 53, Petitioner argues that his underlying conditions place him at high risk for serious illness or death if he contracts the COVID-19 virus. *Id.* Accordingly, Petitioner requests that this Court grant him compassionate release and allow him to begin supervised release.

## II. LEGAL STANDARD

### A. The Exhaustion Requirement

A petitioner may bring a motion to modify his or her sentence "after the defendant has fully

2

exhausted all administrative rights to appeal a failure of the Bureau of Prisons ("BOP") to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court. *Id.* However, the exhaustion requirement may be waived under the following circumstances: (1) the relief sought would be futile upon exhaustion; (2) exhaustion via the agency review process would result in inadequate relief; or (3) pursuit of agency review would subject the petitioner to undue prejudice. *United States v. Zukerman*, 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020) *citing Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019). The COVID-19 pandemic, which could result in catastrophic health consequences for petitioners vulnerable to infection, implicates all three exceptions justifying the waiver of the exhaustion requirement. *Miller v. United States*, 2020 WL 1814084, at *2 (E.D. Mich. Apr. 9, 2020); *United States v. Zukerman*, 2020 WL 1659880, at *3 (S.D.N.Y. April 3, 2020); *United States v. Perez*, 2020 WL 1456422, at *3–4 (S.D.N.Y. Apr. 1, 2020); *United States v. Gonzalez*, 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020).

**B. The Compassionate Release Standard**

As amended by the FIRST STEP Act, a court may modify a term of imprisonment on the motion of the petitioner after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "Extraordinary and compelling reasons" was previously defined by the United States Sentencing Commission ("Sentencing Commission") in U.S.S.G. § 1B1.13, Application Note 1. Before the passage of the FIRST STEP Act, the Sentencing Commission provided that a sentence may be modified due to the petitioner's medical condition, age, or family circumstances and further

defined the limits under which a sentence reduction may be given under those justifications. U.S.S.G. § 1B1.13, n. 1 (A)–(C). The Sentencing Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at n. 1 (D). Use of the "catch-all provision" prior to the FIRST STEP Act was severely restricted because it required approval from the BOP before an individual could petition the district court for relief. *Id.*

However, U.S.S.G. § 1B1.13 is now outdated following the passage of the FIRST STEP Act, which allows individuals to petition the district court directly without clearance from the BOP. As such, U.S.S.G. § 1B1.13 is merely advisory and does not bind the Court's application of § 3582(c)(1)(A). *McCoy v. United States*, 2020 WL 2738225, at *4 (E.D. Va. May 26, 2020); *see also United States v. Lisi*, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) ("[T]he Court may independently evaluate whether [petitioner] has raised an extraordinary and compelling reason for compassionate release ... [but § 1B1.13's policy statement] remain[s] as helpful guidance to courts...."); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("[T]he Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive"). A petitioner's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). In sum, the Court may consider a combination of factors, including but not limited to those listed in U.S.S.G. § 1B1.13, in evaluating a petitioner's request for a sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i).

4

## III. DISCUSSION

### A. The Exhaustion Requirement

The Court finds that although Petitioner did not exhaust his administrative remedies prior to bringing his motion with the Court, this requirement is waived. Petitioner indicates that in October or November of 2020, he submitted a request for compassionate release to the warden at FCI Petersburg Medium. ECF No. 212 at 3. However, according to BOP records, the warden has not received a request from Petitioner. ECF Nos. 215, 221. Nevertheless, this Court, consistent with its previous opinions, waives the exhaustion requirement given the COVID-19 pandemic and the catastrophic health consequences it has for inmates with underlying health conditions. *See United States v. Poulios*, N. 2:09-cr-109, 2020 WL 1922775, at *1 (E.D. Va. April 21, 2020); *United States v. Casey*, No. 4:18-cr-4, 2020 WL 2297184, at *2 (E.D. Va. May 6, 2020); *Miller v. United States*, 2020 WL 1814084, at *2 (E.D. Mich. Apr. 9, 2020); *Zukerman*, 2020 WL 1659880, at *3; *United States v. Perez*, 2020 WL 1456422, at *3–4 (S.D.N.Y. Apr. 1, 2020); *Gonzalez*, 2020 WL 1536155, at *2.

### B. Petitioner's Compassionate Release Request

The Court now turns to whether Petitioner has set forth extraordinary and compelling reasons to modify his sentence because of the grave risk COVID-19 poses to individuals with underlying health conditions. During the COVID-19 pandemic, federal courts around the country have found that compassionate release is justified under the circumstances. *Zukerman*, 2020 WL 1659880, at *4 *citing Perez*, 2020 WL 1546422, at *4; *United States v. Colvin*, 2020 WL 1613943, *4 (D. Conn. Apr. 2, 2020); *United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 1, 2020); *United States v. Jepsen*, No. 3:19-CV-00073 (VLB), 2020 WL 1640232, at *5 (D. Conn. Apr. 1, 2020); *Gonzalez*, 2020 WL 1536155, at *3; *United States v.*

5

*Muniz*, No. 4:09-CR-0199-1, 2020 WL 1540325, at *2 (S.D. Tex. Mar. 30, 2020); *United States v. Campagna*, No. 16 CR. 78-01 (LGS), 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020). Unlike the above cases, Petitioner's compassionate release is not justified under the circumstances.

First, Petitioner does not show a potential susceptibility to serious health risks from COVID-19. According to Petitioner's medical records, at age 53, he is diagnosed with hypertension, Phlebitis, and Thrombophlebitis. ECF No. 212 at Exhibit 1; *see also*, ECF No. 216 (Sealed). However, as of January 6, 2021, his conditions were reported as "stable." *Id.* Moreover, Petitioner was advised to exercise and have a diet with low saturated fats and salts to properly manage his illnesses. *Id.* Further, his BOP records show that Petitioner is physically cleared to work and has no physical restrictions to exclude him from working. *Id.; see also*, ECF No. 215. According to the Centers for Disease Control and Prevention, individuals with hypertension *might* be at an increased risk for severe illness from COVID-19.[1] Accordingly, the Court finds that Petitioner has not presented evidence showing "extraordinary or compelling reasons" that he is at particularized risk of serious illness should be contract COVID-19.

Second, Petitioner does show a potential risk of contracting the disease at his prison facility. As of March 31, 2021, the BOP has reported a total of 18 current (253 recovered, 1 death) positive cases of COVID-19 for inmates and 14 current (8 recovered) for staff at FCI Petersburg Medium.[2] Moreover, increased testing is showing that COVID-19 has rapidly spread throughout prisons all over the country.[3] Despite the BOP's protection measures, individuals housed in prisons remain particularly vulnerable to infection. *See Muniz*, 2020 WL 1540325, at *1; *see also Esparza*,

---

[1] Centers for Disease Control and Prevention, "People Who are at Higher Risk," *CDC.gov*, available at https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/people-at-higher-risk.html
[2] *See* Federal Bureau of Prisons, "COVID-19 Corona Virus," *BOP.gov*, https://www.bop.gov/coronavirus/
[3] *See* Centers for Disease Control and Prevention, "Coronavirus Disease 2019: Cases in the US," *CDC.gov*, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html

2020 WL1696084, at *1 (noting that "[e]ven in the best run prisons, officials might find it difficult if not impossible to follow the CDC's guidelines for preventing the spread of the virus among inmates and staff: practicing fastidious hygiene and keeping a distance of at least six feet from others"). Therefore, the Court need not wait until an outbreak occurs at a specific prison facility to determine that a petitioner has a particularized risk of contracting the disease. *See Zukerman*, 2020 WL 1659880, at *6 *citing Rodriguez*, 2020 WL 1627331, at * 12 ("the Court did not intend for that sentence to include incurring a great and unforeseen risk of severe illness or death brought on by a global pandemic").

Third, the § 3553(a) factors do not weigh in favor of Petitioner's compassionate release. The seriousness of Petitioner's conduct for his underlying offense remain unchanged. According to his PSR, Petitioner's criminal conspiracy, which involved five or more participants, went beyond merely drug dealing. Petitioner was a leader in a violent drug trafficking ring where he was responsible for various acts of violence, including armed robberies, attempted armed robberies, and home invasions, shootings, and shooting and stabbing deaths. ECF No. 209 at ¶ 93. For example, in 1994, Petitioner and two co-conspirators abducted and maliciously wounded an unindicted co-conspirator. *Id.* at ¶¶ 93, 94. Specifically, on September 2, 1994, Petitioner shot, strangled, stabbed, and killed Errol Ward and then dumped his body on the street. *Id.* at ¶ 54. In early 1995, an unindicted co-conspirator who was with Petitioner during the murder of Errol Ward learned that Petitioner had told two other associates about the murder. *Id.* at ¶ 55. For this reason, the unindicted co-conspirator changed the locks at his residence. In response, Petitioner beat up the unindicted co-conspirator, restrained him with duct tape, and stole approximately $20,000 worth of furniture from the resident. *Id.* In all, during the conspiracy, Petitioner shot multiple victims where one was paralyzed because of his injuries and two died. *Id.* at ¶¶ 93, 94.

7

Petitioner also has an extensive career criminal record, starting at age 16, when he was charged for Distribution of Marijuana and then Assault and Battery at age 18. *Id.* at ¶¶ 103-104. As an adult, Petitioner was convicted of various drug, firearms, and violent crime offenses, including multiple assaults and battery, discharge of a firearm, and various traffic offenses. *Id.* at ¶¶ 105-114. In all, Petitioner was assessed a total offense level of 49, a criminal history category III, and a recommended guideline provision of Life imprisonment *Id.* at ¶¶ 170-172. As a result of his crimes and career criminal history, Petitioner was sentenced to Life imprisonment followed by five years of supervised release. ECF No. 131. To date, Petitioner has only served 22 years of his Life sentence. ECF Nos. 212 at 2, 215.

While in prison, Petitioner has not demonstrated a record of rehabilitation. Petitioner's disciplinary record show multiple incidents including: Engaging in Sexual Act (2018), Fighting With Another Person (2004), Counterfeiting or Forgery Document (2003), Refusing to Obey Order (2001), and Assaulting Without Serious Injury (2001). ECF Nos. 215, 221. On the other hand, Petitioner's obtained his G.E.D. in 2003 and has attended groups for Basic Cognitive Skills, Suicide Cadre, Peer Mentor, Inmate Suicide Companion, and Criminal Thinking. *Id.*

Overall, given the seriousness of Petitioner's crimes and criminal history, the Court finds that Petitioner's release would not promote the respect for law or provide adequate deterrence. Furthermore, the Court finds that Petitioner is a risk to the community. Accordingly, the § 3553(a) factors do not weigh in his favor. Therefore, based on the aforementioned factors, the Court finds that Petitioner does not qualify for compassionate release.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's motion is **DENIED**.

The Clerk is **DIRECTED** to send a copy of this Order to the Petitioner, the United States

Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED.**

Norfolk, Virginia
April 2, 2021

_____
UNITED STATES DISTRICT JUDGE