IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

LARRY KENNETH SPEED,

                     Petitioner,

v.                                             **CRIMINAL ACTION NO. 2:00-CR-092**

UNITED STATES OF AMERICA,

                     Respondent.

## *MEMORANDUM OPINION AND ORDER*

Before the Court is Larry Kenneth Speed's ("Petitioner") Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A). ECF No. 239 ("Pet'r's Mot."). The Government opposed the Motion. ECF No. 241 ("Resp. Opp'n."). Petitioner replied. ECF No. 244 ("Pet'r's Reply"). This matter is now ripe for judicial determination. For the reasons below, Petitioner's Motion is **DENIED.**

## I. FACTUAL AND PROCEDURAL HISTORY

On July 21, 2000, Petitioner was named in a Nineteen-Count Superseding Indictment. Presentence Investigation Report ¶ 1, ECF No. 233 ("PSR"). Count One charged Petitioner with Conspiracy to Distribute and Possess with Intent to Distribute 50 Grams or More of Cocaine Base, 5 Kilograms or More of Cocaine, and 1 Kilogram or More of Heroin, in violation of 21 U.S.C. § 846. *Id.* Count Two charged Petitioner with Engaging in a Continuing Criminal Enterprise, in violation of 21 U.S.C. §§ 848(a) and (c). *Id.* Counts Three and Four charged Petitioner with Murder While Engaged in a Drug Offense, in violation of 21 U.S.C. § 848(e)(1)(A). *Id.* Counts Five and Sixteen charged Petitioner with Possession with Intent to Distribute 50 Grams or More of Cocaine

1

Base, in violation of 21 U.S.C. § 841(a)(1). *Id.* Counts Six, Eight, Twelve, Fifteen, and Seventeen charged Petitioner with Use and Carry a Firearm, in violation of 18 U.S.C. § 924(c). *Id.* Count Seven charged Petitioner with Possession with Intent to Distribute 7 Grams of Heroin, in violation of 21 U.S.C. § 841(a)(1). *Id.* Count Nine charged Petitioner with Possession with Intent to Distribute 100 Grams or More of Heroin, in violation of 21 U.S.C. § 841(a)(1). *Id.* Counts Ten, Thirteen, Fourteen, and Nineteen charged Petitioner with Possession with Intent to Distribute 500 Grams or More of Cocaine, in violation of 21 U.S.C. § 841(a)(1). *Id.* Count Eleven charged Petitioner with Possession with Intent to Distribute 2 Ounces of Heroin, in violation of 21 U.S.C. § 841(a)(1). *Id.* Count Eighteen charged Petitioner with Possession with Intent to Distribute 9 Ounces of Cocaine, in violation of 21 U.S.C. § 841(a)(1). *Id.*

On December 22, 2000, Petitioner pled guilty to Counts One and Four of the Indictment. *Id.* ¶ 2. On March 26, 2001, the Court sentenced Petitioner to Life Imprisonment followed by Five (5) Years Supervised Release. ECF No. 131. On November 6, 2024, Petitioner filed this Motion through counsel. ECF No. 239. On December 6, 2024, the Government filed its Response in Opposition. ECF No. 241. On December 18, 2024, Petitioner filed a Reply. ECF No. 244.

According to the Statement of Facts in Petitioner's Presentence Investigation Report ("PSR"), from about late 1987 until his arrest in January 1999, Petitioner actively participated in a drug-trafficking conspiracy in the Hampton Roads area. PSR ¶ 5. Petitioner played different roles in the conspiracy, including the "organizer, manager, supervisor, supplier, distributor, enforcer, and robber." *Id.* ¶ 6. Petitioner is accountable for 10,240.895 grams of "crack" cocaine, 9,570.875 grams of cocaine, and 1,250.38 grams of heroin. *Id.* ¶ 96.

In addition to the Statement of Facts, Petitioner reported no physical or mental health issues. *Id.* ¶¶ 145–46. However, Petitioner reported having some substance abuse issues, including

2

frequent alcohol consumption and sporadic illegal drug use. *Id.* ¶ 147. The PSR assessed Petitioner with a total offense level of 48, a criminal history category of III, and a recommended guideline range of life imprisonment. *Id.* ¶ 172. Petitioner is incarcerated at FCI Petersburg Medium with a projected release date of Life.[1] On October 11, 2023, Petitioner submitted a Request for Compassionate Release to the Warden. Pet'r's Mot. at 6. On October 25, 2023, the Bureau of Prisons ("BOP") did not process Petitioner's request because he did not select one of the extraordinary and compelling circumstances listed on the form. *Id.*

## II.   LEGAL STANDARD

### A. The Threshold Requirement Standard

A petitioner may bring a motion to modify their sentence after they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [petitioner]'s behalf or the lapse of 30 days from the receipt of such a request by the warden of the [petitioner]'s facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release has two options after requesting that the BOP bring a motion on their behalf: (1) exhaust their administrative remedies; or (2) wait thirty days from the date of their initial request to the BOP. *United States v. Muhammad*, 16 F.4th 126, 131 (4th Cir. 2021) ("§ 3582(c)(1)(A) outlines two routes – one of which does not require exhaustion of administrative remedies.").

In other words, a petitioner may satisfy the threshold requirement if they "request[] the Bureau of Prisons to bring a motion on their behalf and *either* fully exhaust[] all administrative rights to appeal the Bureau's decision *or* wait[] 30 days from the date of their initial request to file a motion in the district court." *Id.* (emphasis in original). Thus, a petitioner who made a request to

---

[1] *See* Federal Bureau of Prisons, "Find an Inmate," *BOP.gov*, https://www.bop.gov/inmateloc/ (last visited Mar. 20, 2025).

3

the BOP at least thirty days prior may seek compassionate release with the district court whether the BOP has ruled on the request or not. *Id.* (holding petitioner satisfied the threshold requirement by filing his compassionate release motion 149 days after submitting a request to the warden, which the warden denied) (citing *United States v. Garrett*, 15 F.4th 335, 338 (5th Cir. 2021); *United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020). Moreover, the threshold requirement is a non-jurisdictional claim-processing rule, and thus may be waived or forfeited if not timely raised. *Muhammad*, 16 F.4th at 129–30 (collecting cases from sister circuits holding the same).

### B. The Compassionate Release Standard

As amended by the First Step Act, a court may modify a term of imprisonment by motion of the petitioner after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "Extraordinary and compelling reasons" is defined by the United States Sentencing Commission ("Sentencing Commission") in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13. Yet, after the First Step Act amended § 3582(c)(1)(A) to allow defendants to petition the district court directly without clearance from the BOP, U.S.S.G. § 1B1.13 became advisory and nonbinding on courts' application of § 3582(c)(1)(A) because § 1B1.13 was no longer an "applicable" Sentencing Commission policy statement. *See United States v. McCoy*, 981 F.3d 271, 276, 283 (4th Cir. 2020). Courts were thus "empowered to consider *any* extraordinary and compelling reason for release that a defendant might raise." *Id.* at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)). The most recent amendments to the Sentencing Guidelines went into effect on November 1, 2023, and U.S.S.G. § 1B1.13 now contemplates that a defendant may file a motion for compassionate release directly with the district court. *See* U.S.S.G. § 1B1.13(a) (2023). Therefore,

§ 1B1.13 is now an "applicable" policy statement under § 3582(c)(1)(A), and the Court must ensure that a sentence reduction granted under § 3582(c)(1)(A) is "consistent with" that Guideline. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Brown*, 706 F. Supp. 3d 526, No. JKB-08-00415, 2023 WL 8653179, at *2 (D. Md. Dec. 13, 2023).

Section 1B1.13(b) identifies five broad categories by which defendants may demonstrate extraordinary and compelling reasons to reduce a sentence: (1) medical circumstances; (2) the defendant's age; (3) family circumstances; (4) whether the defendant was a victim of abuse; (5) other reasons (catch-all provision);[2] and (6) whether the defendant received an unusually long sentence. §§ 1B1.13(b)(1)–(6). Section 1B1.13(b)(6) provides:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

However, there are limitations on the changes in law being extraordinary and compelling to warrant a sentence reduction. § 1B1.13(c). The amended policy statement provides that "a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists." *Id.* If a defendant can show that extraordinary and compelling reasons exist to warrant a sentence reduction under this policy statement, then the court may consider it. *Id.* Nevertheless, the Court may consider a combination of factors, including but not limited to those listed in U.S.S.G. § 1B1.13, when evaluating whether extraordinary and compelling circumstances

---

[2] This catch-all provision allows courts to continue to exercise discretion in considering "any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284; *see Brown*, 2023 WL 8653179, at *2 ("This catchall maintains the broad discretion conferred on district courts to consider a wide array of extraordinary and compelling justifications for release.").

exist to modify a sentence under 18 U.S.C. § 3582(c)(1)(A)(i).

## III.    DISCUSSION

### A. The Threshold Requirement

The Court finds that Petitioner satisfied the threshold requirement. On October 11, 2023, Petitioner submitted a Request for Compassionate Release to the Warden of FCI Petersburg Medium. Pet'r's Mot. at 6; ECF No. 231. On October 25, 2023, Petitioner's request was returned unprocessed because he declined to select one of the circumstances listed on the form and instead elected to write in "Other Reasons." Pet'r's Mot. at 6; ECF No. 231. The Government contends that BOP records reflect that Petitioner has not submitted a compassionate release request. Resp. Opp'n. at 4. Confusingly, the Government appears to be referring to a separate, prior request for compassionate release submitted in 2020 and a recommendation against release from the U.S. Probation Office filed in 2021. *Id.*; ECF No. 215. Therefore, it is not clear whether the Government disputes that Petitioner has satisfied the exhaustion requirement for independently seeking compassionate release in this Court. Pet'r's Reply at 2.

The Court finds that Petitioner has satisfied the threshold requirement. The plain language of § 3582(c)(1)(a) allows a petitioner to bring a motion for compassionate release by either fully exhausting his administrative rights *or* by waiting thirty days after receipt of his request to the warden of his facility. Although the Warden returned Petitioner's request to him unprocessed on October 25, 2023, the Warden's response constitutes receipt of Petitioner's request. *Muhammad*, 16 F.4th at 131 (citing *Garrett*, 15 F.4th at 338 ("[A] prisoner may wait 30 days after filing his request and—whether the BOP has ruled on the request or not—he is free to file a motion in the district court.")). Accordingly, on December 6, 2024, Petitioner filed this Motion through counsel. Thus, Petitioner meets the threshold requirement because more than thirty days have passed since

he received receipt of his request to the Warden.

**B. Petitioner's Compassionate Release Request**

The Court now addresses whether Petitioner has set forth extraordinary and compelling reasons to modify his sentence. Petitioner argues that the changes in the law create a disproportionate sentence warranting compassionate release under U.S.S.G. §§ 1B1.13(b)(6) and (c). *See* Pet'r's Mot. at 4–8. Additionally, Petitioner argues his rehabilitative efforts warrant compassionate release under U.S.S.G. § 1B1.13(d). *Id.* at 17–19. Lastly, Petitioner argues the sentencing factors under 18 U.S.C. § 3553(a) support compassionate release. *Id.* at 15–17. Therefore, Petitioner asks the Court to reduce his sentence to time served. *Id.* at 2. Both parties agree Petitioner has served at least ten (10) years of his sentence. *See* Pet'r's Mot at 2; *see* Resp Opp'n. at 2.

> **i.    *Changes in the Law***

Most of Petitioner's Motion focuses on changes in the law, specifically the Fair Sentencing Act of 2010, Pub. L. 111-220, and the Supreme Court's holdings in *United States v. Booker*, 543 U.S. 220 (2005), and *Alleyne v. United States*, 570 U.S. 99 (2013). Petitioner claims that these changes in the law create a gross disparity between the sentence Petitioner received and the sentence he would have received if sentenced today. Pet'r's Mot. at 1, 4–5.

> **a.    *Impact of the Fair Sentencing Act***

It is true that federal sentencing policy has shifted towards seeking reduced punishments for crack cocaine offenses. *Kimbrough v. United States*, 552 U.S. 85, 94–100 (2007). As a result of the Anti-Drug Abuse Act of 1986, Pub. L. 99-570, 21 U.S.C. § 841(b)(1) required a five-year mandatory minimum sentence for a first-time trafficking offense involving 5 grams or more of crack cocaine or 500 grams of powder cocaine, and a ten-year mandatory minimum sentence for

a first-time trafficking offense involving 50 grams or more of crack cocaine or 5,000 grams or more of powder cocaine. This sentencing structure became known as the "100-to-1 drug-quantity ratio" because 100 times more powder cocaine than crack cocaine was required to trigger the same mandatory minimum sentence. U.S.S.G. Manual app. C, Amendment 706 (Nov. 1, 2007) (amending base offense levels for crack cocaine offenses).

Policymakers became worried that the 100-to-1 ratio was too high after it was shown that African Americans were disproportionately convicted of crack cocaine offenses at the lower trigger threshold. *Roane v. United States*, 51 F.4th 541, 546 (4th Cir. 2022). In *Booker*, the Supreme Court held that the Sentencing Guidelines are advisory, not mandatory. 543 U.S. at 245–46.

Following *Booker*, Congress passed the Fair Sentencing Act, which reduced the statutory penalties for certain crack cocaine offenses to produce an 18-to-1 crack-to-powder drug-quantity ratio. *Id.* at 546–47. Section 2 of the Fair Sentencing Act raised the drug-quantity trigger for a ten-year minimum sentence under 21 U.S.C. §§ 841(b)(1)(A) and 960(b)(1) from 50 grams to 280 grams of crack cocaine, and the five-year minimum trigger under §§ 841(b)(1)(B) and 960(b)(2) from 5 grams to 28 grams of crack cocaine. Pub. L. 111-220 § 2; *Roane*, 51 F.4th at 547. Section 3 of the Fair Sentencing Act eliminated the mandatory minimum sentence for simple possession of crack cocaine under 21 U.S.C. § 844(a). Pub. L. 111-220 § 3; *Roane*, 51 F.4th at 547.

Congress enacted the First Step Act in 2018, which allowed courts to apply the Fair Sentencing Act retroactively to sentences for certain crimes committed prior to its enactment. Pub. L. 115-391; *United States v. Gravatt*, 953 F.3d 258, 260 (4th Cir. 2020) (explaining that the First Step Act was passed because the same disparities between sentences for crack and powder cocaine offenses remained after the passage of the Fair Sentencing Act).

8

Despite this, Petitioner would not benefit today from these changes in law because of his conviction for Murder While Engaged in a Continuing Criminal Enterprise. Under 21 U.S.C. § 848(a), "any person who engages in a continuing criminal enterprise shall be sentenced to a term of imprisonment which may not be less than 20 years and which may be up to life imprisonment." Murder While Engaged in a Continuing Criminal Enterprise is not an offense covered by the First Step Act. *Roane*, 51 F.4th at 545 ("The statutory penalties in § 848(e)(1)(A) remained the same both before and after the Fair Sentencing Act—death or life imprisonment with a statutory minimum of 20 years imprisonment."). The Court of Appeals for the Fourth Circuit has noted that Congress intended the Fair Sentencing Act to apply to low-level drug dealers, not repeat offenders who murdered others "in furtherance of their drug dealing." *Id.* (internal quotation marks omitted).

### b.   First-Degree Murder Cross-Reference

Petitioner argues that the cross-reference to the first-degree murder Sentencing Guideline for Count One runs afoul of the Sixth Amendment and the Supreme Court's holding in *Alleyne*. Pet'r's Mot. at 11. Both *Booker* and *Alleyne* addressed why mandatory Sentencing Guidelines are unconstitutional under the Sixth Amendment. *Booker*, 543 U.S. at 226–27, 236 (holding that mandatory Guidelines "do[] not provide a sound guide to enforcement of the Sixth Amendment's guarantee of a jury trial"); *Alleyne*, 570 U.S. at 103 (holding that facts that increase the mandatory minimum of an offense must be submitted to a jury and found beyond a reasonable doubt).

The Fourth Circuit has held that "compassionate release cannot be used to make a collateral attack on the lawfulness of a previously imposed sentence." *United States v. McPherson*, No. 2:09-1348-RMG, 2023 WL 4161173 (D.S.C. June 23, 2023) (citing *United States v. Ferguson*, 55 F.4th 262, 269–70 (4th Cir. 2022). Title 28 U.S.C. § 2255 is "'[t]he exclusive remedy' for challenging a federal conviction or sentence after the conclusion of the period for direct appeal." *Ferguson*, 55

9

F.4th at 270 (quoting *United States v. Simpson*, 27 F. App'x. 221, 224 (4th Cir. 2001) (Traxler, J., concurring)). "Because § 2255 is the exclusive method of collaterally attacking a federal conviction or sentence, a criminal defendant is foreclosed from the use of another mechanism, *such as compassionate release*, to sidestep 2255's requirements." *Id.* (emphasis added). Thus, it is inappropriate for this Court to rule on the constitutionality of Petitioner's sentence.

Finally, courts are free to look to first-degree murder as a cross-reference in sentencing. U.S.S.G. § 2A1.1 ("this guideline may be applied as a result of a cross reference…or in cases in which the offense level of a guideline is calculated using the underlying crime"); *United States v. Gutierrez*, 373 F. App'x. 13, No. 09-12917, 2010 WL 1377185, at *1 (11th Cir. Apr. 8, 2010) (applying first-degree murder cross-reference to charge for conspiracy to possess cocaine with intent to distribute); *United States v. Greer*, 57 F.4th 626, 630 (8th Cir. 2023) (affirming district court's holding that defendant's "wildly violent" and "terrorizing" conduct justified an attempted first-degree murder cross-reference (internal quotation marks omitted)); *United States v. Rogers*, 261 F App'x. 849, 852 (6th Cir. 2008) (looking to *Booker*, 543 U.S. at 232–33, in holding that "a sentencing court is authorized to make factual findings by a preponderance of the evidence in order to appropriately determine the advisory sentencing range under the Guidelines").

Therefore, considering the above facts and that Petitioner would likely receive life imprisonment if he were sentenced today, these changes in the law do not constitute a gross disparity in sentencing constituting an extraordinary and compelling circumstance for compassionate release.

### ii. *Rehabilitation*

Petitioner argues that he has rehabilitated himself while in prison. *See* Pet'r's Mot. at 17–19. Petitioner has worked various jobs, participated in several volunteer programs, and completed

multiple educational courses. *Id.* at 17–18. Although the Court recognizes and commends Petitioner for his participation in various vocational, educational, and rehabilitative courses, these efforts are not extraordinary and compelling to warrant compassionate release. *See* U.S.S.G. § 1B1.13(d) (stating "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement."); *United States v. McCall*, 56 F.4th 1048, 1051 (6th Cir. 2022); *United States v. Torres*, 464 F. Supp. 3d 651, 659 (S.D.N.Y. 2020); *United States v. Woolridge*, No. 3:09CR156 (DJN), 2021 WL 415131, at *7 (E.D. Va. Feb. 5, 2021); *United States v. Ahmad*, No. 1:11-cr-554-TSE, ECF No. 75 at 6 (E.D. Va. Apr. 8, 2021) (finding that the defendant's coursework did not support compassionate release, reasoning that "[i]t is not uncommon for a defendant to take educational classes to pass the time in prison").

Petitioner is expected to follow the rules and improve himself while in prison. *United States v. Logan*, 532 F. Supp. 3d 725, 735 (D. Minn. 2021). The Court is not convinced Petitioner is prepared to return to the community. Thus, Petitioner has not established his rehabilitative efforts justify compassionate release.

### iii.    *Section 3553(a) Factors*

The Court finds that the § 3553(a) factors do not weigh in favor of Petitioner's compassionate release. The seriousness of Petitioner's conduct—engaging in a violent, long-term drug conspiracy—remains unchanged, and weighs heavily against release. Courts in this district have consistently denied compassionate release based on the seriousness of the defendant's offense. *United States v. Prater*, No. 3:13-cr-133, 2021 WL 54364 (E.D. Va. Jan. 6, 2021), at *6 (denying compassionate release due to the petitioner's long history of drug trafficking and violent crimes); *United States v. Reid*, No. 2:02-cr-172-7, 2020 WL 7318266 (E.D. Va. Dec. 10, 2020), at *3 (holding that the petitioner's "lengthy and serious criminal record" weighed against release

(internal quotation marks omitted)). Petitioner's criminal history concerns the Court as he has demonstrated no respect for the law beginning at age sixteen. PSR ¶ 103. Petitioner argues that the PSR's criminal history computation of a category of III "was predominantly the result of traffic offenses." Pet'r's Mot. at 3. However, Petitioner's prior arrests include those for the distribution of marijuana, trespassing, discharging a firearm, and assault and battery. PSR ¶¶ 103–04, 106, 110, 114, 119.

Before his incarceration, Petitioner demonstrated a proclivity for violence that weighs against compassionate release. Petitioner's past violent conduct includes shooting and subsequently paralyzing Ricky Whitaker in 1988 and shooting and killing Keith Short in 1990. *Id.* ¶¶ 17, 23. In 1992, Petitioner organized two home invasion robberies, during one of which Petitioner shot a dog within the residence. *Id.* ¶¶ 29–30. In 1994, Petitioner abducted and assaulted an unindicted co-conspirator with a knife, and shot, stabbed, and killed Errol Ward. *Id.* ¶¶ 44, 54. Disturbingly, these examples are merely a blip in Petitioner's entire criminal history of participating in the distribution of large quantities of drugs in the Hampton Roads area. *See id.* ¶¶ 5–93.

Petitioner argues that his criminal acts constituted "youthful misconduct," and that "[m]uch of [his] criminal activity...occurred during a period in which his brain was still developing." Pet'r's Mot. at 15–17. The Court is not persuaded by this argument. Petitioner was a fully matured adult (between the ages of 21–27) when he committed multiple heinous offenses. PSR ¶¶ 17, 23, 29–30, 44, 54. When Petitioner committed these offenses, he was—or should have been—completely aware of the inappropriateness of his conduct. *See United States v. Andrews*, No. 05-280, 2025 U.S. Dist. LEXIS 1394 (E.D. Pa. Jan. 6, 2025), at *4 (holding that "the combination of [the petitioner's] age at the time of the offense and rehabilitation are not, individually or taken

together, of similar gravity to the circumstances enumerated in § 1B1.13(b)(1)–(4)"); *id.* at \*5 ("[Petitioner's] spree of armed robberies [at nineteen years old] cannot be chalked up to mere youthful indiscretion.").

Additionally, Petitioner's release plan does not adequately protect the public from the potential of a subsequent offense. Petitioner bears the burden of proving that his release plan will not pose a danger to the public. *United States v. Miller*, No. 3:16-cr-121, 2020 WL 4547809 (E.D. Va. Aug. 6, 2020), at \*6. Petitioner's Motion for Compassionate Release indicates a release plan to reside with his family, but Petitioner fails to indicate an exact location to support his proposed release plan. *See* Pet'r's Mot. at 20; *see* Pet'r's Reply at 7. Petitioner has also failed to articulate any concrete plans for obtaining employment or continuing his education. *See* Pet'r's Mot. at 20; *see* Pet'r's Reply at 7. Thus, the Court finds that the § 3553(a) factors do not weigh in Petitioner's favor and his release would not promote the respect for law or provide adequate deterrence. Therefore, Petitioner does not qualify for compassionate release.

## IV.   CONCLUSION

For the foregoing reasons, Petitioner has not shown an extraordinary and compelling reason to grant compassionate release. Thus, Petitioner's Motion for Compassionate Release, ECF No. 239, is **DENIED.**

The Clerk is **DIRECTED** to send a copy of this Order to the Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED.**

Norfolk, Virginia
March 21, 2025

Raymond A. Jackson
**United States District Judge**

13